Bissell, P. J.,
delivered the opinion of the court.
This appeal is the outgrowth of a proceeding in the nature of an interpleader brought by West against several parties to enable him to pay money which he owed into court and escape any liability as to its application or distribution. In 1890, several parties — Copp, Morris and Downs — composed what the witnesses term a syndicate, organized to handle certain property located on what are called Columbia Heights, Jefferson county. These parties did business with reference to this property under the designation of Fred S. Morris & Company. The title to the lands was held mostly by Morris, although partially by the other two persons. Irrespective of the matter of the legal title, it is conceded that both Morris and Downs were equitably interested in the ownership of all the property, and had certain specified interests in the venture. Their proportionate rights were, as to Copp, one half, and as to the other two, one quarter each. While the parties were engaged in handling the property, Longstreet, who is the appellee here, negotiated with Morris & Company for an option on certain of the lots, with power' of disposition and sale. Under the verdict of the jury, it will be assumed that an option on some of the property was given to' Longstreet by Morris, and that both Downs and Copp had full knowledge of the option and its terms, and that it was given with their consent. Longstreet took hold of the enterprise and 'sold the property about which he had contracted to West for a given consideration, amounting to about thirty-five hundred dollars. The option was not produced, seeming to have been lost or mislaid, although on an application for a new trial on the ground of newly discovered evidence, an alleged copy of it was set up in the affidavit. At all events, the property was sold to West, who gave his notes, maturing at one and two years, for the purchase price. Whether these notes covered all of the price or only a part of it is not clear; but, whether it be one or the other, the notes were turned over to Morris & Company, and held by them for some time as a part of the *284 assets of the firm. So much of the purchase price was included in the notes that there was not enough cash paid to give Longstreet what he was entitled to out of the transaction, and it was therefore agreed between Morris and Downs, who signed the paper, that Longstreet should have an interest in the notes when they should be paid to the extent of ten hundred and fifty dollars. When the paper evidencing Longstreet’s interest was executed, it was only signed by Morris and Downs, and Copp’s name did not appear, though it is very clear from the testimony he had knowledge of the entire transaction, knew of the option to Longstreet, and probably knew all the terms of the deal, since it was carried out by his copartners in the enterprise. In any event, he would be charged with the knowledge, though, as a matter •of fact, he may not have been directly told about Longstreet’s interest. The firm took the notes and held them until they concluded to wind up the affairs of the syndicate. In the distribution of the assets, West’s notes were indorsed without recourse by Morris, to whom they had been made payable, and given to Copp as his share of the enterprise. When the first note fell due, a year from its date, Longstree,t demanded his interest in the payment, which Copp declined to pay. Right here there is a controversy as to what happened and as to the admissions of the parties. Copp insists that he declined because Longstreet had no interest in the notes, which, according to his testimony, Longstreet admitted when he produced the paper signed only by Downs and Morris. Longstreet, on the other hand, insists that Copp declined because he (Longstreet) was entitled to nothing until all the notes were paid, which Longstreet conceded was probably the accurate construction of the paper. All these facts came out on the trial of the issue made by the cross complaint filed in the case'of Longstreet v. Copp and Downs and Morris. Morris and Downs made no defense, judgment passed against them, and the issue between Longstreet and Copp as to Copp’s interest in and knowledge of the transaction was left to the jury, which found with Longstreet concerning the matter.
*285 With this verdict we have no disposition to interfere. The appellant does not assign any errors of law which would warrant us in disturbing the judgment. It is of very slight consequence what the interest of Copp and Morris and Downs may have been in the title to the realty, since the record very clearly demonstrates that whatever the title was, it was held for their joint profit and advantage, and the property was sold and the proceeds divided among the parties according to their respective interests. The parties did business as a firm or as a syndicate, and whether they held the title as a firm or individuals is of slight moment, since the proceeds were evidently treated by them as partnership assets, distributable according to their interests in the realty. While these persons were thus transacting business, they gave an option to Longstreet to dispose of some part of the realty, and he sold it according to the granted authority to West, fora consideration which was satisfactory to the parties, since they took the notes which represented the consideration, and have collected them as they fell due. This was in law a ratification of the transaction, and would bind the parties to carry out whatever agreement they had made with Longstreet in reference to his compensation. Both Morris and Downs, by their paper, conceded that he was entitled to receive out of the notes ten hundred and fifty dollars, and Longstreet very clearly proved by his own testimony that this was the arrangement between all of the parties. An examination of the record leaves no doubt in the mind of the court that Copp was fully advised as to the transaction, and cognizant of the terms under which Longstreet took the option and his right to an interest in the paper. Whether or not, in a settlement of the affairs and distribution of the assets of the concern, Copp protected himself against Morris and Downs in the event of their inability to pay one half of Longstreet’s claim, does not appear. He evidently sought to avoid any personal liability by a transfer of the notes to an innocent purchaser, 3ST. K. Morris, who, of course, took title relieved of Longstreet’s claim. But this does not relieve Copp from the liability to pay Longstreet. *286 Longstreet was entitled to his pay out of the notes, because Copp received it from West with full notice of Longstreet’s claim, and under a liability to pay Longstreet what he was entitled to. Some question is made concerning Morris’ authority to act for Copp. Little weight can be attached to the contention, since Copp admits this authority, and ratified the sale by the acceptance of the notes and the purchase price.
The parties complain because the court restricted their examination of Copp concerning the terms on which it was agreed between Copp and Morris that the property should be sold. The court did not err in this particular, for the question was wholly immaterial, since Copp assented to the transaction and received the proceeds. He could not accept the benefits and then insist that there was no authority in his agent to do what had been done. We do not agree with counsel that the only issue in the case was the one of fraud as between Morris, Downs and Copp, although we confess there are some circumstances in the case which lend some color to the appellee’s contention that this issue was affirmatively established in his favor. We do not express an opinion concerning it, nor find it necessary to pass on it. When once it was made evident Copp had full knowledge of the deal and of Longstreet’s interest in it, he could not take the notes indorsed by Morris as his interest in the transaction without being charged with the responsibility which came from that knowledge. The error based on the refusal of the court to set aside the verdict and judgment after the discovery of the written option given to Longstreet is not well laid. Doubtless the paper would have been competent as testimony at the time of the trial, but it would in no way serve to overthrow the agreement which Morris and Downs made with Longstreet concerning his commissions, nor would it tend to establish Copp’s contention that he had no knowledge of the terms of the .transaction as between Longstreet and the other parties in interest. There might be some discrepancy between Longstreet’s claim and the paper itself, yet when the trade was accepted, and carried out as Longstreet made it, *287 the option itself became an unimportant matter, for it was merged in the ultimate act of the parties, whereby the property was sold to West and paid for by the notes which were taken.
We are unable to discover any error in the record, and the judgment will accordingly be affirmed.

Affirmed.